*Appeal No. 24-2956*

---

# IN THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

---

## KEITH TROUT, ET AL.

*Plaintiffs and Appellants,*

v.

## COUNTY OF MADERA, ET AL.

*Defendants and Appellees.*

---

On Appeal from the United States District Court for the Eastern District of California, Case No. 22-cv-00867-ADA-SAB
Hon. Ana De Alba, United States District Judge

Hon. Stanley A. Boone, United States Magistrate Judge

---

## BRIEF OF APPELLEE COUNTY OF MADERA

---

McCormick, Barstow, Sheppard,
Wayte & Carruth LLP
Timothy J. Buchanan
Matthew E. Fletcher
7647 North Fresno Street
Fresno, California 93720
*tim.buchanan@mccormickbarstow.com*
*matt.fletcher@mccormickbarstow.com*
Telephone: (559) 433-1300
Facsimile: (559) 433-2300

*Attorneys for Appellee County of Madera*

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

INTRODUCTION ......................................................................... 1

STATEMENT OF JURISDICTION ............................................... 2

STATEMENT OF THE CASE AND FACTS ............................... 2

STANDARD OF REVIEW AND STANDARDS GOVERNING
    RULE 12(B)(6) MOTIONS ................................................ 13

LEGAL ARGUMENT ............................................................... 16

I.    THE FIRST AMENDED COMPLAINT DOES NOT STATE
    A VIABLE CLAIM FOR *MONELL* LIABILITY AGAINST
    THE COUNTY UNDER THE STATE-CREATED DANGER
    DOCTRINE ................................................................... 16

    A.    General Law on State-Created Danger. ............... 17

    B.    The FAC Fails to Plead a County Policy or Custom
        That Caused This Death. ..................................... 20

    C.    The FAC Alleges No County Actions or Inactions That
        Deliberately Created a Danger to Calley to Which She
        Was Not Already Exposed. .................................. 24

        1.    The FAC Impermissibly Fails to Differentiate
            Actions of Multiple Defendants. ................. 25

        2.    The FAC Alleges Facts on "Information and
            Belief" Without Alleging the Basis for Such
            Beliefs. ...................................................... 30

        3.    The FAC Fails to Plead a Plausible Claim That
            the County Is Liable For Creating a Danger to
            Calley To Which She Was Not Already Exposed. ....... 32

        4.    The FAC Does Not Plausibly Allege the County
            Was "Deliberately Indifferent" to Calley's Safety. ...... 46

II.    THE FAC ALLEGES NO PLAUSIBLE CLAIM OF
    FAILURE TO TRAIN COUNTY EMPLOYEES ............................. 48

## TABLE OF CONTENTS
### (Continued)

**Page**

    A.    "Failure to Train is the Narrowest, Most "Tenuous" of All *Monell* Claims .................................................... 49

    B.    The FAC Entirely Fails to Allege a Plausible Claim of Failure to Train. ...................................................... 51

    C.    The FAC Fails to Plausibly Allege Deliberate Indifference in the Failure to Train Allegation. ................... 56

    D.    The FAC Alleges No Plausible Causation on this Claim. ..................................................................... 57

III.    APPELLANT HAS WAIVED AMENDMENT. ............................. 58

IV.    CONCLUSION ................................................................. 59

CERTIFICATE OF SERVICE ................................................ 61

## TABLE OF AUTHORITIES

**Page**

<u>**CASES**</u>

*Adickes v. S.H. Kress & Co.*
398 U.S. 144, 167-169 (1970) ........................................................ 22

*AK Futures LLC v. TBH Supply LLC*
No. 8:23-CV-01030-JVS (ADSx), 2024 WL 2984023, at *3
(C.D. Cal. 2024) .................................................................................. 7

*Ashcroft v. Iqbal*
556 U.S. 662, 678 (2009) .................................. 13, 14, 15, 16, 33, 48

*Bd. Of County Commissioners of Bryan County, Okl. v. Brown*
520 U.S. 397, 403 (1997) ...................................................... 20, 25, 47

*Bell Atl. Corp. v. Twombly*
550 U.S. 544, 570 (2007) ....................................... 13, 14. 15, 46, 58

*Boland v. Engle*
113 F.3d 706, 714-15 (9th Cir. 1997) ............................................. 58

*Borja-Valdes v. City and County of San Francisco*
2015 WL 5522287, at *8 n. 5 (N.D. Cal. 2015) .............................. 14

*Campbell v. State of Washington Dept. of Social and Health Services*
671 F.3d 837, 847 (9th Cir. 2011) ........................................... 41, 42

*Christie v. Iopa*
176 F.3d 1231, 1235 (9th Cir. 1999) .............................................. 23

*City of Canton, Ohio v. Harris*
489 U.S. 378, 387 (1989) ................................................... 49, 51, 53

*City of St. Louis v. Prapotnik*
485 U.S. 112, 139-140 (1988) ......................................................... 22

*Conley v. Gibson*
355 U.S. 41, 45-46 (1957) .............................................................. 14

*Connick v. Thompson*
563 U.S. 51, 61 (2011) ...................................................... 25, 49, 50

*DeShaney v. Winnebago County Dept. of Social Services*
489 U.S. 189, 195 (1989) ................................................................ 17

*Dougherty v. City of Covina*
654 F.3d 892, 900 (9th Cir. 2011) ..................................... 21, 29, 34

# TABLE OF AUTHORITIES
## (Continued)

**Page**

*Flores v. County of Los Angeles*
  758 F.3d 1154, 1158-59 (9th Cir. 2014) ........................................50

*Flores v. EMC Mortgage Co.*
  997 F.Supp.2d 1088, 1103 (E.D. Cal. 2014) ..................................25

*Gauvin v. Trombatore*
  682 F. Supp. 1067, 1071 (N.D. Cal. 1988)......................................25

*Gilligan v. Jamco Dev. Corp.*
  108 F.3d 246, 249 (9th Cir. 1997) .................................................13

*Gordon v. County of Orange*
  6 F.4th 961, 973 (9th Cir. 2021)........................................22, 23, 49

*Herrera v. L.A. Unified*
  18 F.4th 1156, 1161 (9th Cir. 2021) ..............................................47

*Huskey v. City of San Jose*
  204 F.3d 893, 904 (9th Cir. 2000) ...........................................19, 21

*Hyde v. City of Willcox*
  23 F.4th 863, 874-75 (9th Cir. 2022)..........................................2, 49

*Jeffrey v. Foster Wheeler LLC*
  2015 WL 1004687, at *1 n. 2 (N.D. Cal. 2015) .............................14

*Jett v. Dallas Ind. Sch. Dist.*
  491 U.S. 701, 737 (1989) ..............................................................23

*Kennedy v. City of Ridgefield*
  439 F.3d 1055, 1064 n. 5 (9th Cir. 2006) ...........................19, 32, 38

*L.W. v. Grubbs*
  974 F.2d 119, 121-22 (9th Cir. 1992) .................................19, 32, 47

*Martinez v. City of Clovis*
  943 F.3d 1260, 1273-74 (9th Cir. 2019) .......... 19, 32, 38, 39, 40, 41

*Martinez v. High*
  91 F.4th 1022 (9th Cir. 2024)....................................................39, 40

*Monell v. Dept. Of Social Services of City of New York*
  436 U.S. 658 (1978) ........................................................... *passim*

*Mortimer v. Baca*
  594 F.3d 714, 722-23 (9th Cir. 2010) ............................................56

iv

# TABLE OF AUTHORITIES
## (Continued)

**Page**

*Nayab v. Capital One Bank (USA), N.A.*
942 F.3d 480, 493-494 (9th Cir. 2019) ........................................... 30

*OSU Student Alliance v. Ray*
699 F.3d 1053, 1078 (9th Cir. 2012) ............................................. 16

*Oviatt v. Pearce*
954 F.2d 1470, 1474 (9th Cir. 1992) ............................................. 21

*Papasan v. Allain*
478 U.S. 265, 286 (1986) ............................................................. 16

*Patel v. Kent Sch. Dist.*
648 F.3d 965, 971-72 (9th Cir. 2011) .................... 18, 19, 32, 41, 47

*Pembaur v. City of Cincinnati*
475 U.S. 469, 480-481 (1986) ................................................. 21, 22

*Penilla v. City of Huntington Park*
115 F.3d at 707 (9th Cir. 1997) ................................................... 38

*Rosenbaum v. City and County of San Francisco*
484 F.3d 1142, 1157 (9th Cir. 2007) ............................................ 23

*Schneidereit v. Trust Of the Scott and Brian, Inc.*
No. CV-11-06919-JVS (RNBx), 2012 WL 12884908, at *1 n. 5
(C.D. Cal. 2012), *aff'd,* 693 Fed. Appx. 733 (9th Cir. 2017) ........... 7

*Segalman v. Southwest Airlines Co.*
895 F.3d 1219, 1222 (9th Cir. 2018) ............................................ 13

*Somers v. Apple, Inc.*
729 F.3d 953, 959 (9th Cir. 2013) .................................... 15, 33, 48

*Trout v. County of Madera*
No. 22-16177, 2023 WL 8592880 (9th Cir. 2023) ......................... 12

*Trout v. County of Madera*
No-21-CV-06061-PJH, 2022 WL 2490410, at *3 (N.D. Cal.
2022) ...................................................................................... 12

*Tsao v. Desert Palace, Inc.*
698 F.3d 1128, 1138-1139 (9th Cir. 2012) ................................... 26

*Ulrich v. City and County of San Francisco*
308 F.3d 968, 984 (9th Cir. 2002) ............................................... 20

## TABLE OF AUTHORITIES
### (Continued)

**Page**

*Wood v. Ostrander*
    873 F.2d, 583, 590 (9th Cir. 1989)..................................................38

## STATUTES

28 U.S.C. § 1291 .............................................................................2

28 U.S.C. § 1331 .............................................................................2

42 U.S.C. § 1983 ........................................................... *passim*

## OTHER AUTHORITIES

*From Conley to Twombly to Iqbal: A Double Play on the Federal*
    *Rules of Civil Procedure,* 60 Duke L.J. 1, 19 (2010) ......................14

CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, Defendant/Appellee County of Madera discloses as follows:

Defendant/Appellee COUNTY OF MADERA is a governmental entity and therefore has no corporate information to disclose.

McCORMICK, BARSTOW, SHEPPARD,
WAYTE & CARRUTH LLP

August 16, 2024

By:    /s/ Timothy J. Buchanan
Timothy J. Buchanan
Attorneys for Defendant and Appellee
COUNTY OF MADERA

## INTRODUCTION

The theory of this case is astonishing: that a County, informed by a victim of spousal abuse of the brutal and lethally dangerous abuse and its history, becomes liable under the "state-created danger" doctrine under 42 U.S.C. §1983 by encouraging the victim to leave the family household to enter a shelter where her whereabouts would be unknown and she would be removed from the abuser. The present case does *not* factually allege that the County of Madera ("County") made the abuse victim's location known to the abuser. Instead that occurred when a non-County private health care facility (defendant Camarena Health) informed the abuser of an upcoming medical appointment the victim had at the facility. The victim was shot and killed there. The County had no role in that incident, no ownership or control whatsoever over the private facility, and was not the "moving force" behind the murder.

State-created danger and failure to train are rightly very limited doctrines of §1983 liability. Neither is plausibly alleged here. This Court has warned that plaintiffs who allege failure to train from a single incident of alleged harm "circumvent the pleading requirement" for such a claim, allowing a plaintiff to "shoehorn any single incident

1

with no other facts into a failure-to-train claim against the supervisors and the municipality." *Hyde v. City of Willcox,* 23 F.4th 863, 874-75 (9th Cir. 2022). This is *exactly* what this pleading does here. It was properly dismissed.

## STATEMENT OF JURISDICTION

The District court dismissed the FAC with leave to amend. Appellant chose not to amend. The Amended Order of Dismissal filed on April 4, 2024 then dismissed the action with prejudice. ER-4. The amended order recited Appellant's decision not to amend, so the Court then entered the dismissal with prejudice, which is final. Appellant's notice of appeal filed on May 3, 2024 (ER-241), appears timely. Fed.R.App.P. 4(a)(1). Jurisdiction of the District Court is grounded upon 28 U.S.C. §§ 1331 and 1367. Jurisdiction of this Court is grounded upon 28 U.S.C. § 1291.

## STATEMENT OF THE CASE AND FACTS

This action is a series of claims under the federal civil rights laws, 42 U.S.C. § 1983 ("§1983"), arising from the premeditated murder of Calley Garay by her estranged spouse, Julio Garay, in the parking lot of a private health clinic located in Madera, California. Plaintiff sued the clinic, owned and operated by Camarena Health, for state-law tort

claims.[1]  Plaintiff sued the County for violation of §1983 in allegedly not providing sufficient protection to Calley[2] after she reported years of physical abuse by Julio.  Yet the AOB focuses on an argument that the County as a matter of *policy* failed to train its officers and employees on allegedly "obvious" risks, despite alleging no County actions or inactions that created such risks or caused this murder.  The FAC alleges that Camarena, an entity entirely unrelated to the County, informed Julio of a medical appointment Calley had at Camarena, thus putting her in harm's way of his actions.  Julio relied on that information to show up, lie in wait, and shoot Calley when she emerged from the clinic. The County and CAPMC did *not* inform Julio of Calley's whereabouts, directly or indirectly.  They kept her secure and could not have known he was likely present at the clinic waiting in ambush.  The idea they would have taken Calley to a location where Julio was likely to be is utterly implausible.

*Summary of Material Factual Allegations of FAC*

---

[1] Appellant has dismissed the County and CAPMC with prejudice from the state-court claims, which are not a part of this appeal.

[2] This brief refers to the Garays by their first names for ease of reference.  No disrespect is intended.

On this appeal from an order dismissing a complaint under Rule 12(b)(6), the non-conclusory factual allegations of the FAC are presumed true.[3]

The County is a California governmental entity. ER-224 [FAC ¶ 4]. Both claims in the FAC against the County attempt to hold the County liable on a *Monell* claim for the actions or inactions of private parties.

Appellee CAPMC is a private tax-exempt organization and is "not actually a government entity…" but is a "*de facto* state actor under 42 U.S.C. §1983…." ER 223, 224 [FAC ¶¶17, 25-26]. The County allegedly has an unspecified "oversight role" and has contracts with CAPMC. ER 224 [FAC ¶30]. The AOB cites a selective litany of paragraphs from the FAC, including one alleging that a County supervisor, Robert Poythress, was "a final policymaker or a subordinate who had been delegated final policymaking authority for purposes of this claim." AOB 20. Yet the AOB omits that the FAC also lists *every other supervisor* at

---

[3] Appellant's Opening Brief (AOB) summarizes facts taken from the Magistrate Judge's Findings and Recommendations on the motions. AOB 2. This is improper. There were no findings on this motion to dismiss. The Court should disregard the AOB's references to the court's factual summary that have no supporting citations to the FAC.

the time of the events, *plus* the County Director of Social Services, as policymakers, without ever identifying any specific policy they supposedly devised or failed to adopt that caused or would have prevented this murder.  ER-235-236 [FAC ¶¶128-133].   The FAC simply listed a roll call of all County elected officials and officers as having performed the policymaking task needed for a claim under § 1983.

Camarena is a private health care provider.  ER 225, 228.  The FAC does *not* allege Camarena is a "*de facto*" state actor or entity that is subject to § 1983, and no § 1983 claim is made against Camarena. The AOB makes no arguments about the dismissal order as it pertains to Camarena.  The FAC alleges no County oversight, management, contracts or control of Camarena.

Calley and Julio were married in 2015 and at all relevant times until June 2020 were living with their children in a home in Chowchilla, in Madera County.  ER-223, 225 [FAC ¶¶20-21, 41].  In the Spring and Summer of 2020 Calley "repeatedly" told agents of CAPMC and the County specifics of Julio's long history of abuse of Calley, including "repeated" threats of murdering her.  ER-225-227 [FAC ¶¶44-

60].[4]  The Chowchilla Police Department, CAPMC, and the County were made aware of this history, including a 2015 domestic violence restraining order against Julio.  ER-225-227 [FAC ¶¶44, 47, 52-60]. Both CAPMC and the County allegedly "encouraged and aided and abetted Ms. Garay in leaving her husband and in taking the children with her" and the County told her the County would "help protect" her and "help keep her safe."  ER-227, 234-235 [FAC ¶¶61-63, 122, 125-126].  These acts allegedly made Julio "more likely to attempt to stalk and kill" her and the children and "created the actual and particularized danger that caused injury to Ms. Garay, and ultimately proximately caused her death."  ER-235 [FAC ¶ 125].

---

[4] Julio's violence and threats against Calley, which the County is alleged to have used as the basis for recommending she leave her home, are alleged in some detail, including "punching with closed fists, pulling her hair, choking her with hands around her throat, taping a telephone to her head, striking her with a fire poker, pouring drinks upon her, holding a handgun to her head, and making repeated threats against her life."  ER-225 [FAC ¶44]. Later the FAC alleges that in May 2020, shortly before she left her home, Calley told County and CAPMC employees and agents of the "near-constant abuse by her husband, including being assaulted with a 'fire poker,' 'a metal bat,' a 'chainsaw blade,' and 'steel-toed boots.'"  ER-226-227 [FAC ¶55, 57-60]. In June 2020 she "related that her husband had threatened her life, saying 'killing her would be no thing because he killed people before' and similar words on multiple occasions." ER-227 [FAC ¶56, 58].

In the original complaint,[5] Appellant alleged Calley left the home and on June 5, 2020, moved first temporarily to a Fresno hotel, then to the established local shelter for spousal abuse victims, which is owned and operated by CAPMC.[6]  The FAC omits identifying the shelter but merely alleges the County knew Calley would receive health care from Camarena "while she was living at a CAPMC facility."  ER-230 [FAC ¶90].  This is the shelter.

---

[5] "[T]he Court may consider Plaintiffs' prior allegations in determining the *plausibility* of their allegations in the [third amended complaint]." *AK Futures LLC v. TBH Supply LLC,* No. 8:23-CV-01030-JVS (ADSx), 2024 WL 2984023, at *3 (C.D. Cal. 2024) (emphasis in original), *quoting Schneidereit v. Trust Of the Scott and Brian, Inc.,* No. CV-11-06919-JVS (RNBx), 2012 WL 12884908, at *1 n. 5 (C.D. Cal. 2012),  *aff'd,* 693 Fed. Appx. 733 (9th Cir. 2017).

[6] The original Complaint alleged Calley and the children moved to the shelter, identifying it by name, also alleging CAPMC's ownership and operation of the shelter and the "tight system of requirements" they observe, including security measures taken at the shelter to protect residents.  Supp. Excerpt of Record (SER) [Complaint 7/13/2022, Dist. Ct. Dckt. 1, ¶¶35-36, 58, 78, 80-82, 121].  Among the restrictions at the shelter were "locked entrances, locked gates, a system of checkout, and limitations on contact with persons outside the shelter," to which occupants are required to agree.  *Id.* ¶82.  Key among these protective measures is maintaining the secrecy of the location of the shelter from the public, which Plaintiff alleged neither the County nor CAPMC disclosed in this case:  *"Both CAP[MC] and government authorities [i.e., the County] keep the Shelter's location undisclosed."*  SER014 [Complaint ¶58 n. 2 (emphasis added)].

In May 2020 Calley, with help from relatives, went to the police, who arrested Julio and referred the case to the County DSS. SER025 [Complaint ¶115]. While a criminal investigation against him was pending, an older daughter "assisted in having" Julio released from jail. SER026[Complaint ¶122]. The police also obtained an emergency restraining order prohibiting Julio from contacting or approaching Calley and the children, also prohibiting him from taking any direct or indirect actions to obtain their address or locations. SER026 [Complaint ¶¶116-119]. CAPMC and the County "assisted in drafting and procuring" the restraining order. ER-228 [FAC ¶¶65-69]. This filing mentioned that Julio possessed firearms, that he brought a gun to the children's school, and "had abused [Calley] and the children on many other occasions in preceding years." ER-228 [FAC ¶67]. A CAPMC employee, Tina Rodriguez, accompanied Calley to the court hearing in July 2020 on the order and witnessed Julio become so angry that she (Rodriguez) requested security to accompany her and Calley out of the building. ER-228 [FAC ¶¶ 70-76].

The FAC then alleges the conclusion that Rodriguez "did not arrange for specific security steps to be taken to protect" Calley and her

children "thereafter." *Id.* ¶ 76. This misleadingly omits mentioning the extensive steps *already in place* to protect them at the shelter, a secure facility, where Calley returned after the hearing, and because the shelter location was confidential and never disclosed to Julio. *See* n. 6 *supra.* Julio never learned of the shelter location, and per the FAC learned the location of her Camarena visit solely from Camarena. ER-230 [FAC ¶¶84-87].

Julio tragically shot and murdered Calley on July 14, 2020 in the parking lot of a Camarena clinic. ER-225, 233 [FAC ¶¶36, 105, 110-114]. ER-221, 225, 233 [FAC ¶¶1, 3, 40, 106-115].[7] Calley was there that day for a personal medical appointment. ER-232 [FAC ¶¶84, 105]. Three of her minor children were with her and witnessed the shooting. ER-221, 233 [FAC ¶¶2, 112-114].

Again, the FAC says only *Camarena*, not the County or CAPMC, told Julio of Calley's appointment that day, and on this point is uncharacteristically specific: "On or about July 13, 2020, a Camarena Health employee called a cell phone number that belonged to Julio… —

---

[7] Julio was later convicted in Madera County Superior Court of first-degree murder and is serving a sentence of life without parole.

not [Calley]—to confirm a medical care appointment at its clinic for Calley…." ER-230[¶84].[8]  The FAC then goes on in several paragraphs to allege how Camarena violated Calley's safety and privacy rights in disclosing this information to Julio, and had no policy or procedure in place to prevent such disclosures to known abusers.  ER-230 [¶¶85-89]. The FAC alleges no relationship between the County and Camarena and makes no claim that Camarena was acting under color of law in so acting.  No §1983 claim is made against Camarena.   The FAC does not allege the County set policies for Camarena, supervised its employees, or directed, recommended, or participated in Calley's decision to make and attend the appointment at Camarena.

The FAC extrapolates in purely conclusory allegations that the County and CAPMC supposedly had no policies in place regarding disclosing a victim's whereabouts to the abuser.   ER-231[FAC ¶¶94-95].

---

[8] In the original complaint, Appellant identified this Camarena employee by name, and sued that person as a defendant. SER026 [Complaint ¶123].  The FAC removed that party as a defendant and deleted the name from the charging allegations.   Tellingly, neither the original Complaint nor the FAC alleges the County or CAPMC informed Julio of the appointment.  The notion that the County was in a position to, or would, inform him of Calley's whereabouts after taking so many steps to protect her and keep her location secret is entirely implausible for reasons stated below.

It does not enlighten how such a County policy would apply to Camarena.  The FAC then jumps to the conclusion that "upon information and belief," the County [and CAPMC] "knew or should have known" that Camarena shared Calley's health care information with Julio, including appointment details.  ER-231, 232 [FAC ¶¶89, 94, 102-103].  In the first cause of action, Appellant jumps even further, alleging without factual basis that the County and CAPMC disclosed Calley's whereabouts to Julio.  ER-235 [FAC ¶126].  On appeal Appellant cites this as a key allegation showing a claim against the County.  AOB 35.  No factual basis is alleged for any of this theory; it contradicts the FAC's specific, factual allegation that Camarena gave this notice to Julio, and it is implausible on its face as discussed in the argument section.

*Procedural History*

Appellant initially filed suit in the Northern District of California, an entirely improper venue, naming over 20 parties as allegedly responsible for Calley's death.  On motions the Court dismissed the case for improper venue, including a finding that the Northern District filing was a bad-faith form of "blatant forum-shopping."  *Trout v. County of*

*Madera,* No-21-CV-06061-PJH, 2022 WL 2490410, at *3 (N.D. Cal. 2022). Appellant appealed the dismissal, and this Court affirmed. *Trout v. County of Madera,* No. 22-16177, 2023 WL 8592880 (9th Cir. 2023).

Meanwhile, Appellant refiled the action in the Eastern District on July 13, 2022. SER003-072. Plaintiff later changed counsel who filed the FAC at issue here. ER-220. The FAC removed all individually named parties and reduced the claims. The FAC, however, continues to overreach and aver conclusory and improper inferential leaps in its continuing attempt to manufacture a link to hold the County liable for the murder of Calley.

The County filed a motion to dismiss the FAC under Rule 12(b)(6). ER-93-117. Plaintiff filed an opposition (ER-80) and the County filed a reply. ER-66. On June 14, 2023, Magistrate Judge Boone filed an order of findings and recommendations on the motions to dismiss, recommending dismissal of the § 1983 claims with leave to amend. ER-8. On August 25, 2023, District Judge De Alba adopted the findings and recommendations on the motions and dismissed the claims with

leave to amend.  ER-6.  The adopted order generally dismissed the claims against the County on numerous bases.  ER-24-27, 57-62.

The dismissal was with leave to amend but became with prejudice when plaintiff decided not to amend.  On April 4, 2024, the Court entered an amended order stating: "This dismissal is with prejudice for the reasons set forth in the order granting Defendants' motions to dismiss the First Amended Complaint … and because Plaintiff has elected not to amend the complaint…."  ER-4-5.  This appeal followed on May 3, 2024.  ER 241.

## STANDARD OF REVIEW AND STANDARDS GOVERNING RULE 12(b)(6) MOTIONS

An order dismissing an action under Rule 12(b)(6) is reviewed *de novo*.  *Segalman v. Southwest Airlines Co.,* 895 F.3d 1219, 1222 (9th Cir. 2018).   Motions to dismiss under Rule 12(b)(6) are fully proper to test the allegations against the plausibility standards set out in *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007), and *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).[9]

---

[9] Appellant is therefore incorrect in arguing that such a motion is "disfavored" and "rarely granted."  AOB 26, *quoting Gilligan v. Jamco Dev. Corp.,* 108 F.3d 246, 249 (9th Cir. 1997).  Several District Court orders have stated that *Gilligan* was "implicitly overruled" by the

Appellant persists in citing a discarded legal standard for a Rule 12(b)(6) motion, the so-called "no set of facts" standard.  AOB 26-27.[10] Yet in 2007, in *Twombly,* the Supreme Court jettisoned the standard: "[A]fter puzzling the profession for 50 years, this famous observation [the *Conley* "no set of facts" standard] has earned its retirement.  The phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard: *once a claim has been stated adequately,* it may be supported by showing any set of facts consistent with the allegations in the complaint."  *Twombly, supra,* at 563 (emphasis added).

Under Rule 12(b)(6) dismissal "is proper when the complaint either (1) lacks a cognizable theory or (2) fails to allege sufficient facts

---

plausibility standards of *Twombly* and *Iqbal.  See, e.g., Borja-Valdes v. City and County of San Francisco,* 2015 WL 5522287, at *8 n. 5 (N.D. Cal. 2015); *Jeffrey v. Foster Wheeler LLC,* 2015 WL 1004687, at *1 n. 2 (N.D. Cal. 2015) ("*Gilligan* was decided years before *Twombly* and does not control over the pleading standards articulated in those cases").

[10] The root statement of this rule was *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957). A leading commentator has observed: "By establishing plausibility pleading, *Twombly* and *Iqbal* have transformed the function of a complaint from *Conley*'s limited role by imposing a more demanding standard that requires a greater factual foundation than previously was required or originally intended."  Arthur Miller, *From Conley to Twombly to Iqbal: A Double Play on the Federal Rules of Civil Procedure,* 60 Duke L.J. 1, 19 (2010).

to support a cognizable legal theory." *Somers v. Apple, Inc.,* 729 F.3d 953, 959 (9th Cir. 2013) (citations omitted).

Rule 8(a) requires plaintiff to plead "enough facts to state a claim to relief that is plausible on its face," *Twombly,* 550 U.S. at 570, which means the complaint "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009); *Somers,* at 959. This requires a factual showing that raises "more than a sheer possibility that a defendant has acted unlawfully," and facts that are " 'merely consistent with' a defendant's liability" fall short of plausibility. *Id., quoting Twombly* at 556-557.

"Plausibility requires pleading facts, as opposed to conclusory allegations or the 'formulaic recitation of the elements of a cause of action,' and must rise above the mere conceivability or possibility of unlawful conduct that entitles the pleader to relief." *Somers, at* 959-960 (internal citation omitted), *quoting Twombly, supra,* at 555, and *Iqbal, supra.* Conclusions couched in factual terms are entitled to no presumption of truth in considering the motion. *Somers,* at 959;

*Papasan v. Allain,* 478 U.S. 265, 286 (1986) ("…we are not bound to accept as true a legal conclusion couched as a factual allegation.").

Appellant wrongly intimates he is entitled to conduct discovery to develop the facts he now is missing. AOB 36-37. If a complaint "is deficient under rule 8, [plaintiff] is not entitled to discovery, cabined or otherwise." *Iqbal,* at 686. "To be sure, when a plaintiff presses an implausible claim, lack of access to evidence does not save the complaint." *OSU Student Alliance v. Ray,* 699 F.3d 1053, 1078 (9th Cir. 2012).

## LEGAL ARGUMENT

### I.
### THE FIRST AMENDED COMPLAINT DOES NOT STATE A VIABLE CLAIM FOR *MONELL* LIABILITY AGAINST THE COUNTY UNDER THE STATE-CREATED DANGER DOCTRINE

This appeal is limited to the first two claims in the FAC, both under §1983, which were dismissed without leave to amend after Appellant elected not to amend the FAC to cure defects identified in the District Court's dismissal order. Against the County these claims have to meet the stringent standards of municipal liability set down in *Monell v. Dept. Of Social Services of City of New York,* 436 U.S. 658 (1978). Both causes of action allege liability under the "state-created

danger" doctrine. The first claim is for deprivation of Calley's rights; the second is for alleged deprivation of the children's rights.[11] Neither alleges a proper claim under this doctrine. On appeal Appellant focuses on state-created danger and alleged failure to train. Failure to train is discussed in section II below.

## A.    General Law on State-Created Danger.

"[N]othing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors," and "a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." *DeShaney v. Winnebago County Dept. of Social Services,* 489 U.S. 189, 195 (1989) (county's failure to remove child from abusive household; child suffered grievous brain damage); *Murguia v. Langdon,* 61 F.4th 1096, 1110-1111 (9th Cir. 2023), *cert. denied,* 144 S.Ct. 553 (2024). There are, however, two exceptions: (1) "when the state affirmatively places the plaintiff in danger by acting with deliberate indifference to a known or obvious

---

[11] For purposes of the motion to dismiss, the County has not challenged the claim that the rights of Calley and the children are constitutional in dimension.

danger (the state-created danger exception)"; and (2) "when a special relationship exists between the plaintiff and the state (the special-relationship exception)." *Murguia, supra, quoting Patel v. Kent Sch. Dist.,* 648 F.3d 965, 971-72 (9th Cir. 2011) (internal quotation marks omitted).

Plaintiff does not argue for the special relationship exception, which applies only when the state " 'takes a person into its custody and holds him there against his will.' " *Id.* at 1109, *quoting Patel, supra,* at 972. Clearly Calley was not taken into forcible County "custody" against her will, and the FAC does not so allege. She always retained the freedom to decide for herself which avenues to take to deal with Julio's abuse.

There are two requirements for state-created danger: "First, the exception applies only where there is 'affirmative conduct on the part of the state in placing the plaintiff in danger.' Second, the exception applies only where the state acts with 'deliberate indifference' to a 'known or obvious danger.' " *Murguia v. Langdon, supra,* at 1111 (quoting cases; outer quotation marks omitted). The first requirement requires a showing that the state actor "exposed [the plaintiff] to an

actual, particularized danger that [she] would not otherwise have faced." *Id., quoting Martinez v. City of Clovis,* 943 F.3d 1260, 1273-74 (9th Cir. 2019) ("*Martinez I*"). The decision of the state actor cannot be merely negligent; the officer/actor must have acted with deliberate indifference by *intentionally* exposing the person to a known risk of harm that was not present when the officer/actor found the person. *Patel, supra,* 648 F.3d at 974; *L.W. v. Grubbs,* 974 F.2d 119, 121-22 (9th Cir. 1992). Further, the risk of danger must be objectively foreseeable "given the particular circumstances." *Martinez I,* 943 F.3d at 1273-74, *quoting Kennedy v. City of Ridgefield,* 439 F.3d 1055, 1064 n. 5 (9th Cir. 2006).

Here, there is a third requirement. When a plaintiff seeks to impose liability on a governmental entity for the alleged danger, plaintiff must in all cases allege under *Monell* that the harm was directly caused by a government *policy* — it is not enough to identify an action or inaction of a government employee. *See, e.g., Huskey v. City of San Jose,* 204 F.3d 893, 904 (9th Cir. 2000). Appellant appears to agree, arguing the FAC "pleaded proper *Monell* theories of liability against the County." AOB 33-34. The many cases applying this

doctrine in cases discussing only individual officer liability are not relevant to the strict additional requirements of *Monell*.

Appellant's claims fail on all counts.

## B. <u>The FAC Fails to Plead a County Policy or Custom That Caused This Death.</u>

The FAC names the County but no County official or employee. Thus his claim turns on whether the FAC plausibly alleges a basis for County liability under the standards set down in *Monell* and other cases. He argues the FAC meets these standards. Again, he is wrong.

The County cannot be held liable under §1983 for the acts of its employees (or anyone else) on a theory of *respondeat superior*. *Monell*, at 691; *Ulrich v. City and County of San Francisco*, 308 F.3d 968, 984 (9th Cir. 2002). Instead, "[l]iability may attach to a municipality only where the municipality itself causes the constitutional violation through 'execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy.' " *Ulrich*, at 984; *see Bd. Of County Commissioners of Bryan County, Okl. v. Brown*, 520 U.S. 397, 403 (1997); *Monell*, 436 U.S. at 690-691. Thus a plaintiff must plausibly plead four elements: "(1) that [the plaintiff] possessed a constitutional

right of which she was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the constitutional right; and (4) that the policy is the moving force behind the constitutional violation." *Dougherty v. City of Covina,* 654 F.3d 892, 900 (9th Cir. 2011).

Again, the *Monell* policy element applies in all cases, including when, as here, the plaintiff is alleging liability of a governmental entity for state-created danger. *See Huskey v. City of San Jose, supra,* 204 F.3d at 904. "Official policy" refers to "formal rules or understandings — often but not always committed to writing — that are intended to, and do, establish fixed plans of action to be followed under similar circumstances consistently and over time." *Pembaur v. City of Cincinnati,* 475 U.S. 469, 480-481 (1986) (plurality opinion). If inaction is alleged, the constitutional deprivation is not actionable under *Monell* unless it was directly caused by a governmental *policy* of inaction. *Oviatt v. Pearce,* 954 F.2d 1470, 1474 (9th Cir. 1992).

Decisions intended to impact later actions also may qualify as policy, but only if made by a "policymaker" — that is, "by its lawmakers or by those whose edicts or acts may fairly be said to represent official

policy." *Monell,* at 694; *Pembaur,* at 481. The latter type of policy decision must be shown as a "deliberate choice to follow a course of action" made from among various alternatives by the official or officials responsible for establishing "*final policy* with respect to the subject matter in question." *Gordon v. County of Orange,* 6 F.4th 961, 973 (9th Cir. 2021) (emphasis added); *Oviatt, supra,* at 1474; *see also City of St. Louis v. Prapotnik,* 485 U.S. 112, 139-140 (1988) (" the official in question must possess 'final authority to establish municipal policy with respect to the [challenged] action.' "), *quoting Pembaur,* at 481. This requires that the final policymaking official personally commit the unconstitutional violation, or ratify a subordinate's unconstitutional decision and the basis for it. *Gordon,* at 974.

If the alleged policy is unwritten or informal, it must be "so permanent and well settled as to constitute a 'custom or usage' with the force of law." *Gordon v. County of Orange, supra,* 6 F.4th at 974, *quoting Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 167-169 (1970); *Monell,* at 691. A "custom" requires a history of "widespread," "permanent," or "well-settled" actions that reflect a common understanding ("standard operating procedure") about how to react to

similar situations. *See Bd. of Commissioners*, 520 U.S. at 404; *Monell*, 436 U.S. at 691; *Jett v. Dallas Ind. Sch. Dist.,* 491 U.S. 701, 737 (1989); *Rosenbaum v. City and County of San Francisco,* 484 F.3d 1142, 1157 (9th Cir. 2007) (relief properly denied where no evidence of "standard operating procedure or policy directed by an official with final policy-making authority"). Single or isolated incidents are insufficient to show a policy or custom. *Gordon, supra,* 6 F.4th at 974; *Christie v. Iopa,* 176 F.3d 1231, 1235 (9th Cir. 1999).

Appellant implicitly acknowledges this killing was an isolated incident and has never alleged prior incidents that would have shown a longstanding pattern of County conduct or deliberate indifference to abuse victims. AOB 34-35. Nor has the FAC alleged any formal written policy or identified any policymaking official who committed a violation of Calley's rights. His mechanical naming of several County board members and officers is conclusory and specifies no action or inaction by any of them. ER-235-236.[12]  Appellant's specific argument on failure to train is discussed below in section II.

---

[12] As usual, the FAC repeats identical formulaic language to describe each official: each is allegedly "a final policymaker or a subordinate who had been delegated final policymaking authority for purposes of this

Thus Appellant identifies no County policy or custom that could have led subordinate County officers to place Calley into a County-created danger. This killing was an isolated occurrence without precedent. No pattern of prior violations of rights is alleged. Whatever the situation when individual officers are alleged to be liable under § 1983, for the *County* to be liable for a state-created danger, the danger must be causally connected to a County policy or custom. The FAC fails on this basis.

**C.   The FAC Alleges No County Actions or Inactions That Deliberately Created a Danger to Calley to Which She Was Not Already Exposed.**

The AOB argues that the FAC states a claim against CAPMC for liability under the state-created danger doctrine. AOB 28-33. The argument on the County's liability does not specifically discuss this doctrine but has a catchall statement that "The same is true of the claims against the County of Madera." AOB 33. The County section then addresses liability for the failure to train employees which supposedly increased risks of harm to Calley. This continues the

---

claim." *Id.* None is alleged to have formulated and implemented any policy or made any decision that was a "moving force" in Calley's murder.

impermissible practice of simply conflating the County with CAPMC, apparently theorizing that the County is liable for the actions of CAPMC. In any case, the claims fail to plausibly allege a claim under the state-created danger doctrine.

### 1. The FAC Impermissibly Fails to Differentiate Actions of Multiple Defendants.

A complaint that "lumps together… multiple defendants in one broad allegation fails to satisfy [the] notice requirement of Rule 8(a)(2)." *Inman v. Anderson,* 294 F.Supp.3d 907, 919 (N.D. Cal. 2018); *Flores v. EMC Mortgage Co.,* 997 F.Supp.2d 1088, 1103 (E.D. Cal. 2014); *Gauvin v. Trombatore,* 682 F. Supp. 1067, 1071 (N.D. Cal. 1988). The FAC does this, treating the County, CAPMC, and at times Camarena as liable for the conduct not separately attributable to any of them.

Identifying who did what is especially critical to evaluate the County's claimed liability under §1983, because as noted the County **cannot** be vicariously liable for acts of its own employees, or anyone else. *Connick v. Thompson,* 563 U.S. 51, 60 (2011); *Monell,* at 690-91. The County is liable only for its own policy-level actions that were the "moving force" behind the injury alleged. *Id.; see also Bd. of Commissioners v. Brown*, *supra*, 520 U.S. at 403-404. *A fortiori* the

County cannot be liable under §1983 for the actions of outside parties. *See Inman, supra,* 294 F.Supp.3d at 919 (§1983 claim that identified only actions of a county employee, and of city employees not alleged to be agents of the county, and no acts by the county itself, failed to state a claim).[13]

Here, the FAC regularly combines Camarena, CAPMC, and the County into a unified mass without taking meaningful steps to differentiate who did what in the events leading to Calley's death. Often the County and CAPMC are simply combined into a single paragraph. ER-231-237 [FAC ¶¶93, 102, 103, 104, 122, 126, 127, 137-139]. Or the FAC "segregates" the County and CAPMC but in an illusory way by simply restating verbatim the exact same allegations against each party in successive paragraphs. ER-226-228, 230-234 [FAC ¶¶48, 50, 52-53, 61-64, 68-69, 90-91, 95-96, 107-108, 118-119]. Each of these paragraphs is entirely conclusory.

---

[13] This rule also precludes liability of alleged state-color private entities like CAPMC for acts of their employees on the basis of *respondeat superior*. *Tsao v. Desert Palace, Inc.,* 698 F.3d 1128, 1138-1139 (9th Cir. 2012). Thus Appellant cannot extrapolate up from CAPMC employees to CAPMC to the County.

For example, the FAC alleges in identical paragraphs that both the County and CAPMC "helped transport" Calley to Camarena on the day of the shooting. ER-224 [FAC ¶¶25-26]. It then alleges no policies were in place to ensure the safety of an abuse victim, and in any event that these acts allegedly created a new danger to which Calley had not before been exposed. Not only is this contradictory of Appellant's own pleadings (which alleged numerous steps taken to keep Calley's whereabouts unknown and protect her), but there is no way for the County to respond to what it supposedly did to "help" the transporting process when the FAC does not say what each party supposedly did. Under both common law and especially *Monell,* the County cannot be held responsible for a CAPMC employee -- whose acts also are not identified.

Similarly the FAC improperly claims the County is responsible for the actions of Tina Rodriguez, whom the FAC says was a CAPMC employee. AOB 32-33; ER-232 [FAC ¶¶98, 102]. While it does not identify a single action or omission on her part that related to Calley's

situation,[14] the FAC alleges "upon information and belief" that previous actions put CAPMC and the County on notice that she was unfit, yet both "the County and CAPMC failed to adequately train and supervise Ms. Rodriguez, and wrongfully hired and retained her, despite knowing of her unfitness for employment and the risk that it posed for abuse victims like [Calley]." ER-232 [FAC ¶¶100-102]. It fails to allege *how* she was unfit, or what she did to earn this conclusory label in this incident.

The FAC also impermissibly conflates the County with Camarena. On a key issue, the FAC alleges that it was a Camarena employee who wrongfully disclosed Calley's appointment information to Julio (ER-230 [FAC ¶86]), and makes no such allegations against the County or

---

[14] As a conclusion without identifying any factual support, the FAC claims that Ms. Rodriguez was terminated for "incompetency" and "dishonesty" then leaps ahead: "Upon information and belief, the acts of incompetency' and 'dishonesty' that lead [*sic*] to her discharge were repeated and ongoing and included, but were not limited to, the facts and circumstances surrounding [Calley's] death." ER-232 [FAC ¶¶ 98-99]; AOB 32. This is a conclusion to be disregarded, and the facile "information and belief" tag without alleging the factual basis for the belief likewise means the allegation is conclusory and disregarded. *See* § I.C.2 *infra*. The accusation that she failed to take any steps to provide security to Calley after the court hearing is implausible and contradicted by Appellant's own allegations, as discussed below.

CAPMC. Yet the FAC then craftily widens the net by alleging with identical boilerplate language that *all three defendants* (Camarena, the County, and CAPMC) "had insufficient and ineffectual policies, procedures, training and supervisions in place to guard against disclosure of the whereabouts of abuse victims, including but not limited to their appointment times, dates, and locations." ER-231 [FAC ¶¶89, 94]; *see also* ER-221 [FAC ¶3 ("Defendants" informed Julio where Calley could be found)]. If the County and CAPMC did not tell Julio of the appointment, and Camarena is a private party independent of the County's control, it is irrelevant whether the County and CAPMC had "policies" on this subject. In any event, the original complaint alleged that "Both CAP[MC] and government authorities [i.e., the County] keep the Shelter's location undisclosed," SER014 [Complaint ¶58 n. 2], so quite evidently the FAC is false in alleging an utter absence of policies on disclosing whereabouts. In legal terms, the lack of such a policy could not have been the "moving force" of this injury because a Camarena employee would not have been subject to a County policy. *See Dougherty v. City of Covina,* supra, 654 F.3d at 900.

"Lumping" of parties clouds the water and shows that the plaintiff is speculating using conclusions without any level of factual support. Appellant declined the District Court's invitation to amend to clarify any of this. This alone justifies affirming the dismissal order.

### 2. The FAC Alleges Facts on "Information and Belief" Without Alleging the Basis for Such Beliefs.

In assessing a motion to dismiss, a court may consider allegations on information and belief, but *only* if the complaint alleges " 'the facts upon which the belief is founded.' " *Nayab v. Capital One Bank (USA), N.A.,* 942 F.3d 480, 493-494 (9th Cir. 2019). Under this authority, the FAC fails on its face without even examining plausibility.

Under the theory of the FAC, the County played some undefined role in "assisting" the transport of Calley to the Camarena clinic knowing that Julio had been informed of Calley's medical appointment and was likely present to attack her: "*Upon information and belief,* the County and CAPMC had *actual and constructive knowledge, and knew and should have known,* that [Camarena] disclosed private healthcare information, including appointment times, dates, and locations, to persons other than the actual patient, including in situations in which those disclosures placed victims of abuse in specific and imminent

danger at the hands of their abusers," and, *upon information and belief*, they had actual and constructive knowledge "that [Camarena] had disclosed private healthcare information, including appointment times, dates, and locations, to Julio Garay in particular."  ER-232 [FAC ¶¶103-104][emphasis added].  This then forms the basis of a claim that the County and CAPMC placed Calley in danger by, among other things, breaking a promise to her to keep her location undisclosed, and "affirmatively disclosing her location to her abusive husband."  ER-235 [FAC ¶ 126].  Appellant cites this as a key allegation showing a claim against the County.  AOB 35.  But as shown above the FAC springboards one after another conclusion, on information belief unsupported by any facts, escalating into the *non sequitur* conclusion that the County affirmatively disclosed Calley's location to Julio.  This must be ignored on this motion.

As noted above, also to be disregarded is the red-herring claim, also on unsupported "information and belief,"  that Tina Rodriguez, a CAPMC employee, was fired for incompetence and dishonesty that both predated and related to Calley's death, and both CAPMC and the County retained her, knew she was unfit for victims' services, and failed

31

properly to train and supervise her. ER-232 [FAC ¶99-102]. Appellant likes to cite these allegations on appeal as well. AOB 32-33, 36. The FAC never identifies anything Ms. Rodriguez did that is relevant here, but in any case all of it must be ignored in this pleading because it is all on unsupported information and belief.

### 3. The FAC Fails to Plead a Plausible Claim That the County Is Liable For Creating a Danger to Calley To Which She Was Not Already Exposed.

Again the state-created danger doctrine comes into play if the state actor deliberately "exposed [the plaintiff] to an actual, particularized danger that [she] would not otherwise have faced." *Murguia v. Langdon, supra,* 61 F.4th at 1111*; Martinez I,* 943 F.3d 1260, 1273-74. The decision of the state actor cannot be merely negligent; the officer/actor must have acted with deliberate indifference by intentionally exposing the person to a known, foreseeable risk of harm that was not present when the officer/actor found the person. *Patel v. Kent School Dist., supra,* 648 F.3d at 974; *L.W. v. Grubbs, supra,* 974 F.2d at 121-22; *Kennedy v. City of Ridgefield, supra,* 439 F.3d 1055, 1064 n. 5.

Again "facial plausibility" requires pleading of "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal, supra,* 556 U.S. at 678; *Somers v. Apple, Inc., supra,* 729 F.3d at 959. The FAC fails to plead factual content as opposed to conclusions, and does not raise *reasonable* inferences of County liability.

Here, the County is not plausibly alleged to have exposed Calley to a risk she did not otherwise face. The County did not create the risk posed by Julio. He was a private actor bent on violence and grievous abuse and lethal threats, before and after she left home. Appellant's argument that the County somehow created or enhanced these risks by convincing Calley to take the children and leave her home (AOB 35) fails on multiple levels.

First of all, the decision to leave the home was entirely Calley's. The County could not, and did not, forcibly remove Calley from the home. She could have opted to remain there, and at any time she could have returned. Nothing the County did or said could force her to take this action. She was not in County custody, nor forced into any specific course of action or dangerous situation by County action. The FAC

acknowledges the decision to enter the shelter was Calley's: an interview with police "took place at a domestic violence shelter *where [Calley] and her children had sought refuge from [Julio]*." ER-227[FAC ¶57 (emphasis added)].

Secondly, nearly every case this Court has decided on state-created danger addressed the *individual* liability of municipal officers (usually police officers), not a *Monell* claim seeking to hold the government *entity* liable. In most cases, the issue is whether the individual officer is protected by qualified immunity. Here, the FAC does not name any County officers or employees as defendants. The sole issue is the County's (and CAPMC's) *Monell* liability. Thus Appellant cannot succeed in this appeal even by showing that some County employee created an increased risk to Calley (which he does not show). He also would have to plausibly allege this action was causally impelled by a County *policy or custom* that was the "moving force" behind the constitutional deprivation. *Dougherty, supra,* at 900.

Appellant's state-created danger cases of individual officer liability therefore do not support a *Monell* claim against the County. In his argument relating to the County, Appellant identifies only one

34

alleged policy: an alleged policy of failure to train County employees about safety and protecting against disclosure of the abuse victim's whereabouts. AOB 33-35. This contention is discussed below.

Finally, the state-created danger cases cited by Appellant, even if pertinent to the County's liability, do not support the FAC here. Again, Appellant must actionably allege the County "exposed [the plaintiff] to an actual, particularized danger that [she] would not otherwise have faced." *Murguia v. Langdon, supra,* 61 F.4th at 1111. Persuading Calley to leave her home did not place her in a more dangerous position than if she had remained there, even if that pure recommendation qualifies as "affirmative conduct" that placed her in new danger. Julio had serially and very seriously abused her physically. He was angry and threatening at the court hearing on the restraining order in July 2020. *Id.* ¶75. Long before Calley left, he was constantly abusive and violent, inflicting a "pattern of abuse and death threats" upon Calley and the children. ER-225-227 [FAC ¶¶44, 55-60]. He struck Calley on many occasions with various objects. He brought a gun to the children's school. ER-228 [FAC ¶67]. He locked the children in the home when he went to work. SER024 [Complaint ¶ 110]. He regularly threatened

Calley with death -- in the most recent incident, threatening to "put her into the morgue" for failing to pack potato chips in his lunch. SER025 [Complaint ¶114]. This threat terrified Calley so much that she sought help from a cousin and then went to the police for protection. *Id.* ¶115. It cannot reasonably be inferred that a person capable of committing this habitual torrent of very severe physical abuse and threats was in reality saner and safer until his victim left home. He was not.

When the police and County DSS became involved immediate proactive steps were taken to do what can be done to alleviate threats posed by Julio. Police referred her to County DSS, arrested Julio and obtained an emergency protective order against him prohibiting him from contacting her. *Id.* ¶¶117-119. As the FAC alleges, keeping the victim's location away from the abuser is critical when she chooses to leave home, and the County honored this by never informing Julio of her whereabouts. He learned of the appointment at Camarena from Camarena.

Getting Calley into a protected shelter could not remove the threat Julio presented to her -- nothing could. But getting her out of the immediate presence of a vicious serial abuser, one constantly making

pointed lethal threats, was absolutely necessary to give Calley and the children even a chance of survival.

Appellant's cited cases are entirely distinguishable from this one. Their unifying theme is the same: the state actor intentionally placed or left the person in a vulnerable position, exposed to a *known risk of harm in the circumstances presented*. For example, in *Murguia v. Langdon, supra*, 61 F.4th at 1112-17 a police officer and social worker purposely left infant twins alone with their mother, knowing the mother's extensive history of violent abuse of the twins and an older sibling, as well as her alcoholism and erratic mental behavior, and could be individually liable for state-created danger. But two officers who had previously left the children with the mother and a competent neighbor, a hospital worker, were held not answerable to a §1983 claim because by *all facts known to the officers* the neighbor would control the mother and protect the children. Contrast this with Calley's circumstance, where the County had no coercive power to remove her from her home and the facts known to the County showed no indication that Julio was present at Camarena on the fateful day. The FAC alleges no steps the County took to expose her to a known risk that Julio was present at

Camarena. And as noted above, any such alleged knowledge is conclusory and is completely implausible given the lack of any connection between the County and Camarena and the proactive, effective steps taken by the County to keep her location undisclosed. In other words the danger to her at Camarena was not objectively foreseeable to the County "given the particular circumstances." *Martinez I, supra,* 943 F.3d at 1273-74.

To a similar effect are: *Wood v. Ostrander,* 879 F.2d, 583, 590 (9th Cir. 1989) (police left passenger alone at 2:30 a.m. in a high-crime area after arresting the driver of the car and impounding the vehicle); *Penilla v. City of Huntington Park,* 115 F.3d 707, 710 (9th Cir. 1997) (police officers "significantly increased" risk to gravely ill person by cancelling a 911 call and locking him in his room so no one could get in to provide emergency care); *Kennedy v. City of Ridgefield, supra,* 439 F.3d 1055, 1062-63 (police officer reneged on promise to warn plaintiff of when neighbor would be told of plaintiff's complaint of child molestation). Here, no County officer is plausibly alleged to have created a danger by notifying Julio of Calley's whereabouts, which is alleged to have been done by Camarena. Only in the barest conclusions

and impermissible "information and belief" is the County alleged to have "known or should have known" that Camarena had informed Julio of Calley's appointment. As discussed above, these allegations fail. Appellant's accusation that the County failed its "promise" to keep Calley safe is simply an impermissible invitation to strict liability under §1983 in violation of *Monell*. Again no one can be kept entirely safe, and the FAC's actual language recognizes this limitation: it alleges the County told her they would "help protect" her and "help keep her safe." ER-227 [FAC ¶63]. This is precisely what the County did.

Appellant's reliance on *Martinez I, supra,* 943 F.3d 1260, and *Martinez v. High,* 91 F.4th 1022 (9th Cir. 2024) *("Martinez II"),* is entirely misplaced. Again, the sole issue in *Martinez I* was whether three police officers were *individually* liable under § 1983 or were protected by qualified immunity for their actions.[15] The Court affirmed summary judgment for one officer for lack of affirmative acts that increased the dangers to the victim, and the other two on the basis of qualified immunity. *Id.* at 1272-73, 1276. In *Martinez II* the Court

---

[15] Two cities were named and were also granted summary judgment. Plaintiff did not appeal that aspect of the judgment. *Martinez I*, at 1269.

held another police officer was likewise entitled to qualified immunity for her actions in disclosing a confidential report of abuse to the abusive fellow officer, in the presence of the victim. *Martinez II,* 91 F.4th 1022.

In *Martinez I*, the complaint alleged that the police officers "emboldened" the abuser, *who was himself a fellow police officer,* to "continue abusing the victim with impunity." *Id.* at 1273, 1276-77. Responding to successive complaints of abuse, the officers never arrested the abuser and instead praised him, making disparaging comments about the victim. *Id.* They revealed to the abuser parts of a confidential report of abuse made by the victim. The Court narrowly held the state-created danger applies "when an officer reveals a domestic violence complaint made in confidence to an abuser while simultaneously making disparaging comments about the victim" and "praises an abuser in the abuser's presence after the abuser has been protected from arrest, in a manner that communicates to the abuser that the abuser may continue abusing the victim with impunity." *Martinez I*, at 1276-77. In direct contrast, the County here is alleged to have taken numerous steps to disable Julio from continued abuse by convincing Calley to leave the home and move to a secure, undisclosed

shelter, keeping that location secret, and assisting her in obtaining an emergency restraining order against him that prohibited contact and learning her location. He was arrested and so, unlike the abuser in *Martinez,* he was not spared penal process, though he was able to obtain release with the assistance of an older daughter from another marriage. SER025-026 [Complaint ¶¶117, 122]. In no manner did the County "embolden" Julio to continue abusing Calley "with impunity." Precisely the contrary.

The case is far more like cases where state-created danger has been rejected due to the lack of affirmative, specific actions that increased dangers: *Patel v. Kent Sch. Dist., supra,* 648 F.3d 965, 974 (high school did not violate developmentally disabled student's rights by allowing him to go to rest room unattended, where he was assaulted; school took sufficient precautions, did not deprive victim of any basic freedoms, and did not act with deliberate indifference); *Campbell v. State of Washington Dept. of Social and Health Services,* 671 F.3d 837, 847 (9th Cir. 2011) (caregivers showed no deliberate indifference to developmentally disabled adult by allowing her to take her routine bath without supervision; defendants "did not put Justine in the way of a

harm of their own creation"). Similarly, here the County created or violated no policy of deliberate indifference to abuse victims or a pattern of such disregard, or to Calley herself. No County person, or CAPMC person, is alleged to have disclosed any confidential material to Julio.[16] The County and CAPMC thus did not put Calley in the way of a harm of their own creation." *Campbell, supra,* at 847. The County was not, and could not be, a guarantor of Calley's safety given that abuse victims, even while staying at shelters, are still vulnerable to attack if they venture out into the community and the abuser finds them -- which happened here, through no fault of the County.

The entire claim against the County fails any plausibility threshold. While the risks posed by Julio toward Calley were known

---

[16] As discussed above, the FAC's allegation, in the cause of action for *Monell* liability, that the County "affirmatively disclos[ed] her location to her abusive husband" (ER-235 [FAC ¶126]) is a rank conclusion not even supported by the 76-paragraph "Factual Allegations" of the pleading. ER-225-234 [FAC ¶¶40-116]). As noted, the FAC alleges only another rank conclusion, on unsupported and thus impermissible "information and belief," that the County "knew or should have known" that Julio had been informed of Calley's Camarena appointment, not that the County itself had given that information to Julio. The FAC's only factual allegations on this issue are that Camarena disclosed the appointment details to him - which the original complaint, and the FAC, allege in some detail. ER-230; SER026-027 [Complaint ¶¶ 123-128].

and obvious,[17] those risks were all forcefully present when Calley lived with him. His very pointed threats to kill her were made when she lived at home as well. The threats extended to the children as well. Her life was in grave danger staying in the home. Her only chance was to get away and to a safer spot where Julio could not easily discover her location and precautions would be in place. The shelter met those requirements. It is simply absurd to infer that the County, having taken all of these protective steps to keep Calley and the children safe and in an undisclosed location, then informed him of her whereabouts, or took her to a place they knew Julio would be present. The tragedy of a vicious assault by Julio at a private medical facility at this place and time was not a risk the County is plausibly alleged to have created or reasonably foreseen. The County is not alleged to have requested or ordered the medical appointment; it was entirely a voluntary medical

---

[17] The threats as related by Calley to the County and CAPMC included a 5-year history of "near-constant abuse by her husband, including being assaulted with a 'fire poker,' 'a metal bat,' a 'chainsaw blade,' and 'steel-toed boots.'" ER-226-227 [FAC ¶ 55, 57-60]. Further in June 2020 she "related that her husband had threatened her life, saying 'killing her would be no thing because he killed people before' and similar words on multiple occasions." ER-227 [FAC ¶ 56, 58]. To advise Calley to remain in that environment would itself have been inimical to her safety.

visit by Calley, and she had a right to go to it. Appellant avers that the County "facilitated healthcare from Camarena Health"— a facility alleged to have "a policy, practice and custom of leaving messages and communicating healthcare appointment information to persons other than the patient." AOB 35, *citing* FAC ¶¶ 88, 90, 92, 103-04. Nowhere does the FAC enlighten the County on what this "facilitation" consisted of.

Likewise the claim that the County in some manner "helped" transport Calley to Camarena knowing Julio was there is especially implausible. Again it is implausible to an extreme to suggest that the County, having taken the steps it did to get Calley and the children to a more secure, confidential location, would then deliberately take her where Julio is likely to be present. Only the most impermissible conclusions could make such a claim, which is exactly what Appellant has done. And Appellant nowhere attempts to explain how it was that Camarena told Julio of the appointment, attempting to get that information to Calley, yet the County supposedly also did so, for no conceivable purpose. This pleading brings "implausibility" to new heights.

Additionally implausible is Appellant's argument that the County created the risk to Calley by "encourag[ing]" her to leave Julio, taking the children. AOB 35. The apparent theory here is that those tasked with counseling an abuse victim are under a legal obligation to advise the victim to stay right where she is and presumably endure the abuse, because anything else will just make the abuser madder. Given the long, lethal, and extremely violent history of abuse here, which included pointed threats of murder, which the FAC alleges in detail,[18] this approach would no doubt come as a surprise to professionals and advocacy groups in the area of spousal abuse. In legal terms, the decision Calley made was her own; she knew the risks better than anyone and could have stayed where she was in the family home – which she had already done for several years despite the unending abuse. Plaintiff cites no case remotely similar where the giving of such advice in a lethal environment of abuse gave rise to liability as a "state-

---

[18] Again, the FAC alleges in part that in 2020 Calley repeatedly told the County and CAPMC of "near-constant abuse by her husband, including being assaulted with a 'fire poker,' 'a metal bat,' 'a chainsaw blade,' and 'steel-toed boots'" and that Julio "had threatened her life, saying 'killing would be no thing because he killed people before' and similar words on multiple occasions." ER-226-227 [FAC ¶¶ 55-60]. The abuse went back to at least 2015. ER-225-226 [FAC ¶¶ 44-47, 52-53].

45

created danger." The apparent mandatory duty to advise victims not to leave their abusers is simply wrong in the law and in any real-world policy for protecting victims of abuse. In *Twombly* terms, it is roundly implausible.

As a final point, Appellant's conclusory claim that the County did nothing to protect Calley after the court hearing in July 2020 is a complete misstatement of the facts as alleged in the FAC itself, and entirely implausible. AOB 35. The FAC alleges the County had already taken several steps, which *continued* after the hearing, to help keep Calley and the children safe in a secure, undisclosed shelter, after Calley chose to go there. Before *and after* the hearing she was in a shelter whose location was not known to Julio. He never did learn of that location. The implication that Calley was left high and dry after the hearing is absolutely false.

Appellant thus raises no plausible claim that the County incurs *Monell* liability here for state-created danger.

### 4. The FAC Does Not Plausibly Allege the County Was "Deliberately Indifferent" to Calley's Safety.

The FAC also alleges no plausible claim that the County acted with "deliberate indifference" to Calley's safety. Far from indifferent,

the County is alleged to have been aggressive in recommending steps to Calley to remove herself from Julio's presence and its obvious dangers and get to a safer, undisclosed shelter. "Deliberate indifference is 'a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action.' " *Murguia, supra,* at 1111, *quoting Patel*, 648 F.3d at 974, and *Bd. Of Commissioners of Bryan County, Okl. v. Brown,* 520 U.S. 397, 410 (1997). In non-detainee failure-to-protect claims, such as the present one, the Ninth Circuit applies a purely subjective test: "For a defendant to act with deliberate indifference, he must 'recognize[] the unreasonable risk and *actually intend[] to expose the plaintiff to such risks without regard to the consequences to the plaintiff*.' " *Herrera v. L.A. Unified School Dist.,* 18 F.4th 1156, 1158 (9th Cir. 2021) (emphasis added), *quoting Grubbs, supra,* 92 F.3d at 899; *see Murguia, supra,* at 1111. "In other words, the state actor must 'know[] that something **is** going to happen but ignore[ ] the risk and expose[ ] [the plaintiff] to it.' " *Grubbs, supra,* at 900 (original emphasis); *see Murguia, supra; Herrera, supra.* Under this stringent standard, nothing alleged in the FAC comes close to alleging plausibly that the County

intentionally exposed Calley to a known risk of encountering Julio—even assuming the County had anything to do with "helping" take her to Camarena.

In sum, in the FAC the conclusions just pile up, multiply, and inevitably contradict one another. They cannot create a plausible claim of deliberate indifference on the facts alleged here. *Iqbal, supra,* 556 U.S. at 678; *Somers, supra,* 729 F.3d at 959.

## II.
## THE FAC ALLEGES NO PLAUSIBLE CLAIM OF FAILURE TO TRAIN COUNTY EMPLOYEES

Like the FAC, the AOB is a jumble of unconnected dots. Appellant argues the County had no policy of training employees about keeping an abuse victim's whereabouts confidential after she chooses to move to a shelter. AOB 34, 36. Yet the FAC, and the AOB, fail to identify any action by the County that disclosed Calley's whereabouts to Julio. The failure to train claim is entirely conclusory, based on the premise that if the County did something wrong, it was *per se* due to a failure to train, so this is the actionable "policy" under *Monell*.

## A.    "Failure to Train is the Narrowest, Most "Tenuous" of All *Monell* Claims

This Court has warned that plaintiffs who allege failure to train from a single incident of alleged harm "circumvent the pleading requirement" for such a claim, allowing a plaintiff to "shoehorn any single incident with no other facts into a failure-to-train claim against the supervisors and the municipality." *Hyde v. City of Willcox, supra,* 23 F.4th at 874-75.  This is *exactly* what the FAC does.

 "A municipality's culpability for a deprivation of rights [under § 1983] is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson, supra,* 563 U.S. at 61.  Liability for failure to train must apply a  " 'stringent standard of fault,' lest municipal liability under § 1983 collapse into *respondeat superior*."  *Id.* at 70. Like all *Monell* liability, a failure to train must be causally tied to an established government *policy*.  *City of Canton Ohio v. Harris,*  489 U.S. 378, 387 (1989); *Gordon v. County of Orange, supra,* 6 F.4th at 973.  The high Court has cautioned that since failure to train, like all claims under §1983, must be supported by a showing of deliberate indifference to constitutional rights, requiring a *deliberate choice* by the government policymakers to adopt a deficient training program.  "Only where a

failure to train reflects a 'deliberate' or 'conscious' choice by a municipality - a 'policy' as defined by our prior cases - can a city be liable for such a failure under § 1983." *City of Canton, supra,* 489 U.S. at 389; *Flores v. County of Los Angeles,* 758 F.3d 1154, 1158-59 (9th Cir. 2014). This means a plaintiff must allege facts to show that the County "policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose to retain that program." *Connick,* at 61; *Flores* at 1159. Thus the key is notice: A " 'policy of inaction' in light of notice that its program will cause constitutional violations is the functional equivalent of a decision by the city itself to violate the Constitution." *Connick, supra,* at 61-62.

Notice ordinarily requires a plaintiff to establish "[a] pattern of similar constitutional violations by untrained employees . . . to demonstrate deliberate indifference for purposes of failure to train." *Connick, supra,* 563 U.S. at 62. In a "narrow range of circumstances" a pattern of past violations may not be necessary, but only where the

need for training is both "patently obvious" and the failure is likely to cause deprivations of constitutional rights. *Id.* at 63-64.

"In resolving the issue of a city's liability, the focus must be on adequacy of the training program *in relation to the tasks the particular officers must perform*. That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program." *City of Canton v. Harris, supra,* 489 U.S. at 390-91 (emphasis added). In hindsight steps may always be identified that may have averted an injury, but this alone will not support an alleged policy of failure to train. *Id.* And the "identified deficiency in a city's training program must be closely related to the ultimate injury." *Id. Monell* demands these narrow restrictions and stringent requirements; any other approach would open local government to the *respondeat superior* liability prohibited by *Monell. Id.* at 391-92.

## B. The FAC Entirely Fails to Allege a Plausible Claim of Failure to Train.

Appellant alleges a County policy of not training employees on issues that increased risks to Calley's safety and caused Calley's death. AOB 36. Quoting the FAC, he states "the County 'maintained a policy

of failing to train and supervise its employees and agents,' " referring only to Tina Gonzalez, who is alleged to have been an employee of CAPMC, not the County. AOB 36, quoting FAC ¶136-138. The FAC alleges, and on appeal Appellant argues, no basis for the County's obligation to train CAPMC employees. Nor does the FAC identify any County person, by name or position, who formulated policy or caused Calley's death, making a failure to train claim entirely without substance. Nor does he identify any action or omission by Ms. Rodriguez, or anyone actually employed by the County, that caused Calley's death, much less allege that some County policy was the "moving force" of the harms. (Ms. Gonzalez's alleged abandonment of Calley after the court hearing is refuted above.) All of this is insufficient and entirely implausible.

Simply, the failure to train allegations fail because the FAC has not identified anything the County did or did not do that was the moving force behind Calley's murder. And since failure to train is a large step removed from actual conduct that deprives a constitutional right, the failure to train claim is especially implausible and baseless.

Further, Appellant has not identified any required "tasks" County officers were required to perform in the events leading up to Calley's murder, much less how the County fell short in its own conduct. *City of Canton v. Harris, supra,* 489 U.S. at 390-91. This is critical from the standpoint of causation, because showing an officer is "unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program." *Id.*

Plaintiff appears to mix and match three different actions on which failure to train is evident: (1) advising Calley to leave Julio and take the children with her; (2) inadequate safety in transporting Calley to Camarena for the appointment; and (3) alleged failure to keep Calley's whereabouts secret from Julio. Each of these points is refuted above. Appellant does not shed light on precisely how the County officers, who are unidentified in terms of actual conduct or omission, were untrained and that the County had a mandatory duty to provide that training, yet as a matter of policy did not do so. For example, Appellant does not articulate exactly what steps the County and CAPMC were duty-bound to take to protect Calley if, as the FAC

alleges, they in some vague conclusory way "helped transport" her to Camarena. Again, what tasks were required and how were those who performed them inadequately trained? In a scenario like this, where a murderous abuser is lying in wait unbeknownst to the transporters, nothing could suffice to prevent the harm. The point is that Appellant requires the County to speculate on what these steps might be, as he does not identify them himself. Failure to train never gets out of the starting blocks.

The FAC operates negatively but still requires entirely guesswork, which is intolerable from the standpoint of Rule 8 notice. It alleges that the County and CAPM both "took insufficient steps to keep [Calley] and her family safe, transporting her in an easily-identifiable vehicle staffed with one unarmed female employee who had been employed for only approximately 6 months at the time of the appointment." ER-233 [FAC ¶¶107-108]. But even assuming for the sake of argument that the County had anything to do with transporting Calley that day, using an unmarked car would not have made a difference, as Julio was waiting in the Camarena parking lot and easily would have seen Calley exiting her vehicle however it was marked, or later exiting the clinic.

Requiring armed transport is unreasonable overreaching and in any case could not have worked against an ambush. Appellant's evident position that females are incapable of providing protection has no support. But all of this is red-herring stuff. The key, as always, was whether the County and CAPMC knew Julio would be present at Camarena, an issue on which the FAC falls completely flat.

Finally, whatever the allegations of wrongdoing, there is no allegation or plausible contention that this case falls into the narrow exception for patent deficiencies in County training that the policymakers were aware of and failed to remedy. This is not a situation where, in an example cited by the Court in *City of Canton*, a city arms police officers with weapons and trains them to pursue fleeing felons but provides no training in the use of deadly force. *City of Canton,* 489 U.S. at 390 n. 10. Instead, the County employees here acted decisively on Calley's horrendous abuse situation and with her consent moved her to a safer place. Even giving this pleading all benefits of its vagueness and conclusions, noting here could come close to the obvious danger shown in the *Canton* example.

Simply put, there is no plausible allegation of action or inaction by the County which produced this tragedy. There is no pattern of prior violations, and Appellant implicitly agrees. AOB 34-35. No facts are alleged to support a "patently obvious" danger of which County employees were untrained. By every account described in the FAC, the County was well aware of the dangers Julio posed and took numerous steps to protect Calley and keep her out of Julio's presence. Clearly no one in the County/CAPMC ambit needed further training on how to help protect Calley and the children in this horrendous circumstance.

## C. The FAC Fails to Plausibly Allege Deliberate Indifference in the Failure to Train Allegation.

The FAC and its many defects belies any notion that the County acted with deliberate indifference in allegedly failing to train employees on victim safety. Again, it is not reasonably inferable that the County policymakers deliberately chose not to train employees, when it is clear from the facts alleged that they were trained. Not a single issue of non-training is identified except in concocted conclusions based entirely on the acts of a private defendant, Camarena, which is not alleged to have acted under color of law and is unconnected to the County. This case is akin to *Mortimer v. Baca,* 594 F.3d 714, 722-23 (9th Cir. 2010), where

this Court found insufficient evidence of deliberate indifference to an "obvious" need for training where steps were taken to remedy known deficiencies, emphasizing how narrow that rule is. Here, there are no identified deficiencies and nothing that would have alerted the County policymakers to an obvious deficiency in training.

## D. **The FAC Alleges No Plausible Causation on this Claim.**

As discussed above, Appellant does not enlighten on what should have been done differently, or how those different steps would have prevented this tragedy. The ever-missing link is any plausible basis to allege the County knew Julio would be present at Camarena. The FAC utterly fails on this contention for reasons stated above.

On the safety issue, the FAC is also entirely implausible. According to the FAC, Julio *already knew* of Calley's appointment time and location before the van even arrived, and was lying in wait for her in the parking lot during her appointment, so the failure to use an unmarked vehicle could not have caused her death. FAC ¶ 109 ("Julio …, having been alerted to Ms. Garay's appointment date, time, and location, waited until she finished her appointment and had left the clinic.") He easily identified her as soon as she entered the building and

later exited the clinic, whatever vehicle she was in. No level of arming could have prevented or thwarted a surprise attack, which this most certainly was. This simply invokes speculation and does not move the needle from merely "conceivable" to "plausible." *Twombly,* at 555, 570. Indeed on these allegations they are not even conceivable. Causation is absent.

For several reasons, the FAC fails to plausibly allege a County policy or custom that was the "moving force" behind this murder under the state-created danger doctrine.

### III.
### <u>APPELLANT HAS WAIVED AMENDMENT.</u>

Appellant has not requested any further leave to amend, but to the extent he or the Court believes he should be allowed it, amendment should not be allowed. Where, as here, a plaintiff chooses to appeal rather than amend when leave to amend was granted, any right to amend is waived. *Boland v. Engle,* 113 F.3d 706, 714-15 (9th Cir. 1997).

## IV.
## <u>CONCLUSION</u>

For the above reasons, the District Court's judgment of dismissal

should be affirmed.

McCORMICK, BARSTOW, SHEPPARD,
WAYTE & CARRUTH LLP

August 16, 2024

By: <u>    /s/ Timothy J. Buchanan    </u>
Timothy J. Buchanan
Matthew E. Fletcher
Attorneys for Defendant and Appellee,
COUNTY OF MADERA

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** | 22-16177

I am the attorney or self-represented party.

**This brief contains** | 12,162 | **words,** including | 0 | words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The briefs type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one):*

☒ complies with the word limit of Cir. R. 32-1.

☐ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

☐ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

☐ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

☐ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one):*
    ☐ it is a joint brief submitted by separately represented parties.
    ☐ a party or parties are filing a single brief in response to multiple briefs.
    ☐ a party or parties are filing a single brief in response to a longer joint brief.

☐ complies with the length limit designated by court order dated [ ].

☐ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | /s/ Timothy J. Buchanan | **Date** | August 16, 2024
*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* forms@ca9.uscourts.gov

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on August 16, 2024, an electronic copy of the Brief of Appellee County of Madera was filed with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the CM/ECF system. The undersigned also certifies that participants who are registered CM/ECF users will be served via the CM/ECF system.

McCORMICK, BARSTOW, SHEPPARD,
WAYTE & CARRUTH LLP

August 16, 2024

By: /s/ Timothy J. Buchanan
Timothy J. Buchanan
Attorneys for Defendant and Appellee
COUNTY OF MADERA